**ENTERED**

**MAR 2 8 2007**

**D.L.L.**

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**FILED**
‎____O'clock & ____min____

IN RE:

C/A No. 07-00085-JW

Chapter 11

**MAR 2 8 2007**

United States Bankruptcy Court
Columbia, South Carolina (19)

Eastport Golf Club, Inc.,

**ORDER**

Debtor(s).

This matter comes before the Court for a confirmation hearing on Eastport Golf Club, Inc.'s ("Debtor") proposed Plan of Reorganization ("Plan") and on Debtor's oral motion to allow the ballot of "Citicapital Commercial Corp. as assignee of Ingersoll-Rand" ("Ingersoll"). Eastport Community Association, Inc. ("Association") and Donald E. Metzger ("Objecting Parties") oppose allowing Ingersoll's ballot. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C.A. § 1334(a) and (b). This matter is a core proceeding pursuant to 28 U.S.C.A. § 157(b)(2)(A), (B), (L), and (O). Pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following Findings of Fact and Conclusions of Law.[1]

## FINDINGS OF FACT

1.      Debtor is a corporation organized under the laws of the State of South Carolina.

2.      On January 4, 2007, Debtor filed a petition under chapter 11 of the Bankruptcy Code.

3.      Prior to the petition date, Debtor operated a golf course in Horry County, South Carolina.

4.      Debtor's schedules, filed January 4, 2007, disclose a lease for golf carts with "Ingersoll-Rand Financial Services a division of Citi-Capital Comm. Corp." on Schedule G. The schedule indicates that Ingersoll is owed an estimated $60,500 to $80,000. Debtor does not indicate

---

[1]      To the extent that any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent that any Conclusions of Law constitute Findings of Fact, they are so adopted.

in the schedules that Ingersoll's claim is disputed or unliquidated but indicates that Ingersoll's claim is contingent on the closing of "Eastport."

5.      On January 4, 2007, Debtor closed its golf course.

6.      On February 1, 2007, Debtor filed its proposed Plan of Reorganization ("Plan"). Debtor's Plan proposes to reject the lease with Ingersoll and treats Ingersoll as a "Class 2" creditor holding a claim as a result of Debtor's rejection of a lease.

7.      On February 7, 2007, the Court entered an order setting March 12, 2007 as the deadline to file ballots accepting or rejecting the Plan.

8.      Ingersoll did not file a proof of claim prior to the initial confirmation hearing on March 20, 2007.[2]  Debtor presented Ingersoll's ballots accepting the Plan, either as a "Class 2" creditor or as a "Class 8," general unsecured creditor.  Debtor orally moved to allow Ingersoll's ballot.

9.      The Objecting Parties oppose allowance on ground that there is insufficient evidence of excusable neglect and any assignment of a claim from Ingersoll to Citicapital is not properly documented.

## CONCLUSIONS OF LAW

As a matter of policy, this Court is interested in the involvement of all creditors in the chapter 11 process as they provide a needed perspective as to whether a debtor is capable of reorganization and if a particular plan is the best mechanism to accomplish reorganization.  See Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 389, 113 S.Ct. 1489 (1993) (finding that chapter 11 is designed to rehabilitate the debtor).  Though the Objecting Parties contend that the relationship between Ingersoll and Citicapital is not sufficiently documented, the schedules supply sufficient evidence that Citicapital may have some interest in Ingersoll's claim and may vote the claim for Ingersoll.  See Fed. R. Bankr. P. 3003(b)(1). Ingersoll's ballot, though late, would ordinarily be allowed given that the delay in filing the ballot is

---

[2]      The deadline to file proofs of claim is set for May 10, 2007.

minimal, the ballot does not interfere with this judicial proceeding, and there is no indication that Ingersoll is acting in bad faith or does not hold a valid claim. See Pioneer, 507 U.S. at 395 (discussing the elements of excusable neglect). Ingersoll's late ballot may be allowed, regardless of whether there is competent evidence on all of the elements of excusable neglect, including whether the delay was beyond Ingersoll's control. See In re Paul, 101 B.R. 228 (Bankr. S.D. Cal. 1989). Allowance appears appropriate in this case especially considering that there is no prejudice to Debtor or the Objecting Parties, other than allowance may potentially weaken one of their legal arguments for dismissal of this case. See In re Trails' End Lodge, Inc., 54 B.R. 898, 902 (Bankr. D. Vt. 1985) (allowing a late ballot where there was no evidence of prejudice). In weighing the relevant factors for excusable neglect and considering the Supreme Court's flexible view of excusable neglect within the context of a chapter 11, this Court would be inclined to allow Ingersoll's late ballot. See Pioneer, 507 U.S. at 389 (discussing the policy reasons behind providing flexibility to the bankruptcy court in allowing a late claim in a chapter 11).

However, as a threshold matter, Ingersoll must have an allowed claim in order to file a ballot accepting or rejecting the Plan. See 11 U.S.C. § 1126(a). Claims are allowed when filed pursuant to 11 U.S.C. § 501. See id. § 502. In a chapter 11, the filing of a proof of claim is not necessary if a debtor's schedules provide evidence as to the validity and the amount of the claim, unless the claim is scheduled as disputed, contingent, or unliquidated. See Fed. R. Bankr. P. 3003(b)(1). A creditor with a claim allowed by Rule 3003(b)(1) is eligible to vote for a chapter 11 plan. See In re Yates Development, Inc., 258 B.R. 36, 44 (Bankr. M.D. Fla. 2000).

In this case, Debtor schedules indicate that Ingersoll's claim is a claim contingent upon the closing of "Eastport." Debtor's disclosure statement clarifies the schedules and states that Debtor's liability to Ingersoll is triggered upon the rejection of Debtor's lease with Ingersoll, which presumable is the result of the closing of Debtor's golf course. Pursuant to Debtor's Plan, Debtor

seeks to reject its lease with Ingersoll and rejection is effective upon confirmation. Though Debtor may have a present liability to Ingersoll, the schedules nevertheless indicate that the claim is contingent. See In the Matter of Ford, 967 F.2d 1047, 1051 (5th Cir. 1992) (finding a claim is considered "contingent" if "the debt is one which the debtor will be called upon to pay *only upon the occurrence or happening of an extrinsic event* which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred.") (emphasis original). Though all parties acknowledge that the contingency has occurred by the closing of the golf course, the description of the claim as contingent would appear to control until Ingersoll files a proof of claim. Therefore, Ingersoll does not appear, at this point in this case, have an allowed claim because it has not filed a proof of claim.

Since Ingersoll does not have an allowed claim, it may not vote on the Plan pursuant to 11 U.S.C. § 1126. See In re Claremont Towers Co., 175 B.R. 157, 163-164 (Bankr. D.N.J. 1994) (finding Rule 3003 deprives a creditor of a right to vote on debtor's chapter 11 plan when the creditor's claim is listed as disputed, contingent, or unliquidated by the debtor unless the creditor timely files a proof of claim). As the deadline for Ingersoll to file a proof of claim has not expired, Debtor's motion to allow Ingersoll's ballot is denied without prejudice.

**AND IT IS SO ORDERED.**

UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
March 28, 2007

4