UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| IN RE: | C/A No. 07-00085-JW |
|---|---|
| Eastport Golf Club, Inc., | Chapter 11 |
| Debtor(s). | ORDER |

This matter comes before the Court on motion of Eastport Golf Club, Inc. ("Eastport") to vacate a consent order dismissing this bankruptcy case pursuant to Fed. R. Civ. P. 60(b)(1) and (6) and to alter or amend this Court's order of March 27, 2007 ("March Order") pursuant to Fed. R. Civ. P. 59(e) (collectively "Motions"). Eastport Community Association, Inc. and Donald E. Metzger (the "Objecting Parties") oppose the Motions. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C.A. § 1334(a) and (b). The Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52, made applicable to this proceeding pursuant to Federal Rule of Bankruptcy Procedure 7052.[1]

## FINDINGS OF FACT

1. On January 4, 2007, Eastport filed a petition under chapter 11 of the Bankruptcy Code.

2. Prior to the petition date, Eastport operated a golf course known as Eastport Golf Club in Little River, South Carolina (the "Property"). The Property is situated among a group of residential neighborhoods known as the Eastport Community.

3. The Property may be subject to certain covenants, which may restrict its use.

4. On February 1, 2007, Eastport filed a plan of reorganization ("Plan"), which proposed to retain the golf course on the Property but redevelop a portion of the Property into

---

[1] To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also adopted as such.

approximately 920 residential condominium units, referred to in the Plan as the "Grande Villas at Eastport" and the "Villas at Eastport," for the purpose of raising revenue to renovate the golf course and restoring the economic viability of the golf course.

5. Eastport's Plan designated the homeowners within the Eastport Community as Class 9 creditors. Eastport asserted that this class is unimpaired because the proposed redevelopment of the Property is within the uses allowed by the restrictions.

6. The Objecting Parties opposed confirmation of Eastport's Plan and moved to dismiss this case on grounds that this case was filed in bad faith and otherwise futile because the Plan cannot be confirmed over their objection and redevelopment of the Property was not possible because certain restrictive covenants restrict the use of the Property to that of a golf course and related facilities.

7. Prior to the confirmation hearing, Eastport and the Objecting Parties stipulated that they were not litigating the validity and priority of the restrictions on the Property in the context of the hearing on the Plan, disclosure statement, and the Objecting Parties' motion to dismiss.

8. On March 20, 2007, the Court held a hearing on confirmation of the Plan. At the confirmation hearing, Eastport presented the testimony of Melvin F. Graham ("Graham"), Eastport's principal. Eastport maintained that the proposed redevelopment of the Property was necessary to the continued viability of the golf course on the Property and that the proposed development was within the allowed uses of the restrictive covenants. Eastport indicated that if the Court determined that the restrictive covenants did not allow the proposed development then it would likely not continue in this bankruptcy case and prolong litigation in this case.

9.     The Court recessed the confirmation hearing and took under advisement whether the proposed plan of development violated the restrictive covenants, as such a determination was a threshold issue to other matters affecting confirmation. The Court did not consider any of Eastport's arguments alluded to in its disclosure statement that may result in the restrictions being declared invalid or unenforceable at state law.

10.    On March 27, 2007, the Court entered an order (the "March Order") finding that the restrictive covenants did not allow for the proposed development of the Property, as proposed in the Plan, because the proposed use was not that of a "facility related to a golf course." The Court also found that the Objecting Parties' claims were impaired to the extent they were creditors of Eastport.[2]

11.    On April 3, 2007, at the continued hearing on the Plan and motion to dismiss, counsel for Eastport presented to the Court a proposed consent order dismissing this case without prejudice based upon the Objecting Parties' motion to dismiss ("Consent Order"). The Consent Order, entered on April 4, 2007, provided that the March Order would remain effective.

12.    On April 5, 2007, Eastport moved to vacate the Consent Order on grounds that Eastport's counsel mistakenly believed that Graham authorized him to dismiss this case. The Objecting Parties oppose this motion and assert there are not sufficient grounds to grant Eastport relief from the Consent Order. The parties jointly submitted the depositions of Eastport's counsel and Graham as exhibits in this matter.

13.    On April 5, 2007, Eastport also moved to alter or amend the March Order to the extent that the order could be construed as a final adjudication on the validity of the restrictive

---

[2] The Court did not determine whether Eastport could nevertheless modify the rights of the Objecting Parties through a chapter 11 plan, whether the Plan could be confirmed over their objection, whether the Objecting Parties were creditors of Eastport's estate, or whether the restrictive covenants were valid and enforceable under state law.

covenants. The Objecting Parties oppose this motion and assert that Eastport's motion challenges the applicability and the extent of the restrictive covenants, issues the Objecting Parties assert were properly before the Court on March 20, 2007 and determined by the March Order.

## CONCLUSIONS OF LAW

I.    **The Motion Pursuant to Fed. R. Civ. P. 60(b) is Denied**

The decision of whether to grant a motion for relief from judgment under the standard set forth in Rule 60(b) lies within the discretion of the Court. See Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 810 (4th Cir. 1988); Park Corp. v. Lexington Ins. Co., 812 F.2d 894, 896 (4th Cir. 1987). In determining whether a judgment should be set aside under the standards of Rule 60(b), the Court must engage in a two-pronged process. First, the moving party must satisfy three requirements: (1) the motion must be timely filed; (2) the moving party must have a meritorious defense to the action; and (3) the setting aside of the judgment must not unfairly prejudice the nonmoving party. See Nat'l Credit Union v. Gray, 1 F.3d 262, 264 (4th Cir. 1993); Park Corp., 812 F.2d at 896. Once the requirements of the first prong have been met, the moving party must next satisfy one of the six grounds for relief set forth in Rule 60(b). See Park Corp., 812 F.2d at 896.

The Objecting Parties do not dispute that the Motion was timely filed. Nevertheless, the Court concludes that the Motion was timely filed as it was filed the day after the consent order was entered. See Hovis v. Grant/Jacoby, Inc. (In re Air South Airlines, Inc.), 249 B.R. 112, 116 (Bankr. D.S.C. 2000) (finding a motion under Rule 60(b) was filed within a reasonable time where it was filed 37 days after the entry of the order at issue).

4

Eastport has a meritorious defense to the Objecting Parties' motion to dismiss, which was the basis of the Consent Order. See Air South Airlines, 249 B.R. at 116 (holding "it is not necessary for the moving party to establish that it will prevail on the merits of the defenses raised; all that is necessary is that the moving party make a proffer of evidence which would permit a finding in his or her favor."). In support of their motion to dismiss, the Objecting Parties contended that this case should be dismissed because it was merely a two-party dispute between Eastport and the homeowners in the Eastport Community. However, as the Court stated at the hearing on March 20, 2007, this case is more than a mere two-party dispute because it involves the interests of secured and unsecured creditors as well as a large number of homeowners, who appear fractured in their opposition to Eastport's proposed development. It also appears that Eastport has meritorious defenses to the Objecting Parties' contentions that this case was otherwise filed in bad faith because the case is futile. As noted in the March Order, the facts in this case potentially involve novel issues of law regarding whether Eastport may obtain confirmation of its Plan over the objections of the homeowners; whether the Plan may alter any rights held by the homeowners; or whether Eastport may defeat the restrictions, if valid, through various defenses alluded to in prior pleadings. Eastport may have an impaired class that accepts the Plan if Ingersoll-Rand Financial Services' vote is allowed.[3]

However, it appears that the Objecting Parties will be unfairly prejudiced by vacating the Consent Order. Granting the motion to vacate would appear to deprive the Objecting Parties of the identified benefits made on the record on March 20, 2007. The Court and the Objecting Parties were given the clear impression on March 20, 2007 that an adverse ruling on the

---

[3] Ingersoll-Rand Financial Services is designated as a Class 2 creditor, an impaired class. Eastport orally moved to allow the late ballot of Ingersoll-Rand Financial Services; however, this oral motion was denied without prejudice.

5

interpretation of the restrictions before the Court would be an end to this case.[4] Based upon this impression, the Court proceeded with the hearing despite the Objecting Parties request for a continuance. Eastport confirmed this impression by entering into the Consent Order within days of the March Order. The restoration of the chapter 11 case requested by Eastport would further delay the resolution of a pending state court action involving the restrictive covenants and would result in the Objecting Parties incurring substantial additional attorney's fees[5] and possibly other costs. Further, the restoration of the case could cause additional loss of time and opportunity to resolve issues regarding the use and maintenance of the Property as suggested by the parties during the hearing on March 20, 2007. The Court finds that these costs and the delay would unfairly prejudice the Objecting Parties and therefore the Court finds that Eastport's motion pursuant to Fed. R. Civ. P. 60(b) should be denied to the extent that Eastport seeks to restore this bankruptcy case.[6]

## II.    The Motion Pursuant to Fed. R. Civ. P. 59(e) is Granted

A court may grant a motion to alter or amend judgment in three circumstances: "(1) to accommodate an intervening change in controlling law, (2) to account for new evidence not available at trial, or (3) to correct a clear error of law or prevent manifest injustice." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998); In re Midlands Utility, Inc., 253 B.R. 683, 688 (Bankr. D.S.C. 2001) (citing Alexander v. Britt, 89 F.3d 194 (4th Cir. 1996)) (finding a consent decree may be modified to the same extent as if it had been entered as a

---

[4] Eastport indicated that it may file a new case and nothing in this order should be construed as prohibiting Eastport from filing a new bankruptcy case.

[5] The Objecting Parties requested attorney's fees in their response to Eastport's motion to vacate; however, the Court does not award the Objecting Parties their fees and costs in opposing the motion to vacate because it does not appear that Eastport acted in bad faith in filing the motion. See Hutto v. Finney, 437 U.S. 678, 690, 98 S.Ct. 2565 (1978) (noting that courts of equity have the power to award attorney's fees against a party who shows bad faith by delay or hampering the enforcement of an order).

[6] Notwithstanding the denial of relief under Rule 60(b), the Court finds that the Consent Order does not prohibit the alteration of the March Order pursuant to Rule 59(e).

judgment after a full trial). Eastport contends that the March Order should be altered or amended to clarify that the order did not finally determine issues regarding the validity of the purported restrictions on the use of the Property; otherwise, the March Order may work a manifest injustice in preventing Eastport from challenging the validity of the restrictions in other forums. "Manifest injustice" under Rule 59(e) has not been precisely defined. See King's Grant Golf Acquisition, LLC v. J.L Abercrombie, et al., (In re T 2 Green LLC), C/A No. 05-05781-W, Adv. No. 05-80154-W slip op., ___ B.R. ___, 2007 WL 841363 (Bankr. D.S.C. Feb. 12, 2007) (discussing manifest injustice). Notwithstanding the lack of definition, the doctrine has been applied by courts within the Fourth Circuit to alter or amend orders that may deprive a party of a right derived from a joint stipulation. See Musler v. Georgeff, 212 F.R.D. 287, 288-289 (D.Md. 2003).

In this case, Eastport and the Objecting Parties stipulated that the Court was not determining the validity of any restrictions on the Property during the hearing on March 20, 2007. At the hearing on March 20, 2007, the Objecting Parties strongly opposed an attempt by Eastport to determine the validity of the restrictions on the Property without commencing an adversary proceeding. The Objecting Parties now argue that concept of "validity" of the restrictions differs from "applicability" of the restrictions, a concept which the Objecting Parties assert was necessarily determined by the March Order. The Court feels constrained to respect the stipulation. The scope of the hearing on March 20, 2007 was narrow and limited to determining whether certain restrictions, *if valid and enforceable*, would be contrary to Eastport's proposed development and thus result in the Objecting Parties having an impaired claim. The Court could not pass on issues of whether the restrictions were applicable without first determining whether such appeared valid under state law. Matters regarding the validity

and the enforceability of the restrictions at state law were bifurcated from the narrow issue of the interpretation of select provisions of documents that may restrict the use of Property.[7] Since the Court did not finally or fully determine all state law issues regarding the validity and enforceability of certain documents that may restrict the use of the Property, Eastport's motion pursuant to Fed. R. Civ. P. 59(e) is granted and the March Order shall be amended consistent with this Order to fully reflect the parties' stipulation. See Musler v. Georgeff, 212 F.R.D. at 288-289.

**AND IT IS SO ORDERED.**

*/s/ John E. Waites*
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
June 26, 2007

---

[7] The Objecting Parties also argue that the Court determined the scope and extent of the restrictions. The March Order determined the scope and extent of certain restrictions for the limited purposes of confirmation of Eastport's Plan; however, as set forth herein, the March Order is not an adjudication on whether such restrictions are valid or applicable and enforceable under state law.

8