FILED
_ O'clock & _ min. _ M

JUN 2 6 2007

United States Bankruptcy Court
Columbia, South Carolina (30)

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| IN RE: | C/A No. 07-00085-JW |
|---|---|
| | Chapter 11 |
| Eastport Golf Club, Inc., | AMENDED ORDER[1] |
| Debtor(s). | |

ENTERED
JUN 2 6 2007
D.L.L.

This matter comes before the Court for a confirmation hearing on Eastport Golf Club, Inc.'s ("Debtor") proposed Plan of Reorganization ("Plan") and on motions of Eastport Community Association, Inc. ("Association") and Donald E. Metzger ("Objecting Parties") to deny confirmation and to dismiss or convert Debtor's chapter 11 case to a case under chapter 7.[2] The Court has jurisdiction over this proceeding pursuant to 28 U.S.C.A. § 1334(a) and (b). This matter is a core proceeding pursuant to 28 U.S.C.A. § 157(b)(2)(A), (L), and (O). The Objecting Parties oppose confirmation on several grounds; however the threshold issue in this case is whether the term "facilities related to" Debtor's golf course is ambiguous and whether Debtor's redevelopment of the Property, as proposed in the Plan, violates covenants governing the use of the Property and thereby impairs any claim of the Objecting Parties.[3] Pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following Findings of Fact and Conclusions of Law.[4]

**FINDINGS OF FACT**

1.  Debtor is a corporation organized under the laws of the State of South Carolina.

---

[1] This order has been amended pursuant to the order granting Debtor's motion to alter or amend this Court's order entered March 27, 2007.

[2] Other parties filed *pro se* objections to confirmation of Debtor's Plan, which will be addressed by separate order.

[3] The Objecting Parties raise several objections to the Plan, such as the Plan violates the Objecting Parties' right to due process because the Plan purports to resolve the Objecting Parties interest in the Property without an adversary proceeding pursuant to Fed. R. Bankr. P. 7001(2).

[4] To the extent that any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent that any Conclusions of Law constitute Findings of Fact, they are so adopted.

1

2.  On January 4, 2007, Debtor filed a petition under chapter 11 of the Bankruptcy Code.

3.  Debtor is a debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

4.  Prior to the petition date, Debtor operated a golf course known as Eastport Golf Club ("Property") in Little River, South Carolina. The Property is comprised of approximately 98.7 acres and is situated among a group of residential neighborhoods known as the Eastport Community.

5.  The Property and the Eastport Community appear subject to a Declaration of Covenants, Conditions, and Restrictions for EastPort Country Club ("Declaration") dated December 1, 1987 and recorded in the Horry County register of deeds.

6.  The Declaration was executed by EastPort Development Corporation ("Developer") and it sets forth a general plan of development for the property comprising the Eastport Community and the Property. At the time of the Declaration, the Property was owned by EastPort Recreational Corporation ("Recreational Corporation"), an affiliated company of the Developer.

7.  The Declaration and its exhibits provides in relevant part:

> Declarant[5] is the owner of the real property described in "Exhibit A"[6] attached hereto an incorporated herein by reference. Declarant intends by this Declaration to impose upon the Properties (as defined herein) mutually beneficial restrictions under a general plan of improvement for the benefit of all owners of residential property within the Properties.
>
> Declarant hereby declares that all of the property described in "Exhibit A" ... shall be held, sold, and conveyed subject to the following easements, restrictions, covenants, and conditions which are for the purpose of protecting the value and desirability of and which shall run with the real property subjected to this Declaration and which shall be binding on all parties having any right, title, or interest in the described Properties or any part thereof, their

---

[5] The "Declarant" in the Declaration is the Developer.

[6] "Exhibit A" provides a legal description of the Property and the Eastport Community.

heirs, successors, successors-in title, and assigns, and shall inure to the benefit of each owner thereof.

Section 20. "Neighborhood" shall mean and refer to each separately developed and denominated residential area comprised of one (1) or more housing types subject to this Declaration.... For example, and by way of illustration and not limitation, each condominium, townhome development, cluster home development, and single-family detached housing development shall constitute a separate Neighborhood. In addition, each parcel of land intended for development as any of the above shall constitute a neighborhood....

Section 25. "Private Club"[7] shall mean that certain real property located within the Properties and owned by EastPort Recreational Corporation ... and operated as a recreational and social club, and all related and supporting facilities and improvements thereon, including, without limitation, the golf course, the club house, pools and tennis courts.

Section 26. "Properties" shall mean and refer to the real property described in "Exhibit A" ....

### Exhibit A

...

### Description of Private Club

...

NOTE: Anything to the contrary contained in the foregoing Declaration notwithstanding, the Private Club has been subjected to the Declaration on the express understanding that the Declaration shall not unreasonably interfere with the use or operation of the Private Club for recreational purposes, which shall include and without limitation, golf facilities, tennis facilities, swimming facilities and exercise facilities, and social facilities, including without limitation, clubhouses, meeting areas, cabanas, and food and beverage facilities.

8.  The Developer and the Recreation Corporation filed a petition with this Court for relief under chapter 11 on December 29, 1989 ("Prior Cases"). Pursuant to an order of this Court entered August 23, 1990, Marty P. Ouzts, the court appointed examiner, conveyed the assets of the Developer and the Recreation Corporation, including the Property and the Developer's rights under the Declaration, to various lenders ("Lenders") of the Developer and the Recreation Corporation.

---

[7] The "Private Club" is the property now owned by Debtor and referred to in this Order as the "Property."

3

9. By separate Indenture Quit-Claim Deeds, the Lenders conveyed their interest in the Property to Debtor. Each deed conveying each Lender's interest in the Property was signed by Debtor and contains the following provisions:

> RESTRICTIONS: The within-described property is hereby restricted to golf course use only and facilities related or incidental thereto. Further, the property is hereby restricted to golf course playing time in daylight hours only. These restrictions shall be appurtenant to and shall run with the land and restrict future owners of the property described herein.
>
> 1. Grantee[8] hereby covenants, assumes, and agrees to observe and perform all of the terms, conditions, covenants, easements, restrictions, obligations, and other provisions contained in the above-described Declaration....
>
> 4. Grantee agrees for itself and its successors and assigns, that in order to protect the future development of undeveloped properties in the EastPort project, that the property conveyed herein is restricted to golf course use only and facilities related or incidental thereto. Further, the property is restricted to golf course playing time in daylight hours only. These restrictions shall be appurtenant to and shall run with the land and restrict future owners of the property described herein.
>
> 5. The Grantee, for itself and its successors and assigns, hereby agrees to be bound by all of the covenants, agreements and other aforesaid provisions and acknowledges and agrees that all of such covenants, agreements and other aforesaid provisions are fair, reasonable, and equitable.

10. By Indenture Quit-Claim Deed, the Lenders assigned and transferred to the Association all of the Developer's rights under the Declaration and any and all of the Lenders' rights, reserved, retained, and/or held by them, contained in the deeds to Debtor.

11. Debtor operated a public golf course on the Property from approximately 1992 until the petition date.

12. On February 1, 2007, Debtor filed the Plan, which proposes to retain the golf course on the Property but redevelop a portion of the Property into approximately 920 residential condominium units, referred to in the Plan as the "Grande Villas at Eastport" and the "Villas at

---

[8] Debtor is the "Grantee" in the deeds.

Eastport," for the purpose of raising revenue to renovate the golf course and restoring the economically viability of the golf course.[9]

13. Debtor's Plan designates the homeowners within the Eastport Community as Class 9 creditors. Debtor asserts that this class is unimpaired because the proposed redevelopment of the Property is within the uses allowed by the applicable restrictions.

14. Numerous homeowners within the Eastport Community have filed proofs of claim and ballots either accepting or rejecting the Plan. Debtor has objected to the majority of claims filed by the homeowners, including those filed by the Objecting Parties, on grounds that these parties do not hold a claim against Debtor.

15. For purposes of this hearing and by stipulation, Debtor is not challenging the right of these parties to vote for the Plan or oppose confirmation. Debtor also stipulates that the homeowners and the Objecting Parties hold an interest for purposes of the Plan by virtue of the asserted restrictions. Debtor and the Objecting Parties further stipulated that they are not, at this hearing, litigating the validity and priority of the restrictions on the Property.

16. Debtor's principal testified at the first hearing on confirmation. The Objecting Parties objected to his testimony pursuant to the parol evidence rule to the extent that the testimony sought to interpret or supply meaning to the words "facilities" related to Debtor's golf course. By agreement, the parties also desire for the Court to determine at this point in the proceeding whether the residential condominium units are "facilities related to" Debtor's golf course.

## CONCLUSIONS OF LAW

---

[9] According to the testimony of Debtor's principal, without the income and support from additional residential development, the golf course on the Property is not viable.

5

A.  **Parol Evidence Objection is Sustained**

As voluntary contracts, restrictive covenants are enforced unless they are indefinite or contravene public policy. Seabrook Island Property Owners Assoc. v. Marshland Trust, Inc., 358 S.C. 655, 596 S.E.2d 380, 383 (S.C. Ct. App. 2004). Restrictive covenants are strictly construed, with all doubts resolved in favor of a free use of property. See Butler v. Sea Pines Plantation Co., 282 S.C. 113, 317 S.E.2d 464, 468 (S.C. Ct. App. 1984). If language of a restriction is equally capable of two or more different constructions, the construction adopted should be the one that least restricts the use of the property. South Carolina Dept. of Natural Resources v. Town of McClellanville, 345 S.C. 617, 550 S.E.2d 299, 302 (S.C. 2001). Determination of whether language in a contract or a deed is ambiguous is a question of law. See Osborn v. Univ. Med. Assocs., 278 F.Supp.2d 720, 738 (D.S.C. 2003). If the language used is ambiguous, extrinsic evidence relating to conditions surrounding the parties is admissible to aid in determination of the parties' intent. See Richland-Lexington Airport Dist. v. American Airlines, Inc., 306 F.Supp.2d 548, 563 (D.S.C. 2002). Extrinsic evidence is not admissible to create ambiguities where ambiguities do not otherwise exist. See Kirven v. Bartell, 266 S.C. 385, 223 S.E.2d 597 (S.C. 1976); McDaniel v. Connor, 206 S.C. 96, 33 S.E.2d 75, 77 (S.C. 1945) (finding where a deed conveying realty was unambiguous, testimony offered to throw light upon grantor's intention as to extent of estate conveyed was inadmissible). When a covenant is unambiguous, the restriction should be enforced according to its obvious meaning. See Menne v. Keowee Key Property Owners' Ass'n, Inc., 368 S.C. 557, 629 S.E.2d 690, 695 (S.C. Ct. App. 2006).

In this case, the term "facilities" is not ambiguous. Though the term is not defined by the documents at issue, "facilities" is frequently used within a context that makes the meaning of the

word unambiguous and the intent of the parties clear based upon the division of the property within the Eastport Community into residential and recreational areas and the denominated recreational and social facilities allowed on the Property. In this case, the Court does not need to resort to information outside of the four corners of the deeds and the Declaration, incorporated into the deeds, to determine the meaning of the word. See Volvo Const. Equipment North America, Inc. v. CLM Equipment Company, Inc., 386 F.3d 581, 596 (4th Cir. 2004) (finding, under South Carolina law, that terms, though not defined, are not ambiguous where the terms are easily and commonly understood in the English language); Dixon v. Dixon, 362 S.C. 388, 608 S.E.2d 849, 852 (S.C. 2005) (finding that, when a deed or contract are unambiguous, the court will not resort to extrinsic evidence to interpret the document). Therefore, the Objecting Parties objection to the testimony of Debtor's principal is sustained to the extent that Debtor seeks to introduce extrinsic evidence related to the meaning of the term "facilities" as used in the deeds to Debtor or in the Declaration.[10]

**B.    The Term "Facilities" Does Not Include Residential Condominium Units**

Debtor asserts that the Plan's proposal is within uses allowed by the restrictions because the proposed condominiums are "facilities related to" a golf course and are therefore allowed by the restrictions set forth in the indenture deeds to Debtor. Debtor contends that the condominium units are related to the use of the Property as a golf course because development of the units is the only way that the golf course can operate as an economically viable enterprise.[11] The

---

[10]    To the extent Debtor seeks apply an exception to the parol evidence rule, Debtor may introduce extrinsic evidence on fraud, mistake, or other grounds that would entitle Debtor to equitable relief from these documents. See Yarn Industries, Inc. v. Krupp Intern., Inc., 736 F.2d 125, 129 (4th Cir. 1984) (finding the parol evidence rule does not prohibit the introduction of evidence that would invalidate the agreement or allow modification of the agreement).

[11]    The deeds and Declaration do not appear to require Debtor to operate the Property as a golf course but appear to indicate that if there is to be any use of the Property, it must be that of a golf course and facilities related to a golf course.

7

Objecting Parties rely upon the plain language of the indenture deeds and contend that condominiums are not "facilities related to" a golf course. By agreement, the parties seek to have this Court determine whether the proposed condominium units are "facilities related to" Debtor's golf course prior to the continued confirmation hearing on Debtor's Plan.[12]

Although the term "facility" is not defined in the documents at issue, the term has been defined as "something created to serve a particular function: *hospitals and other heath care facilities*." See AMERICAN HERITAGE DICTIONARY 633 (4th ed. 2000); Hardy v. Aiken, 369 S.C. 160, 631 S.E.2d 539, 542 (S.C. 2006) (holding "the language of a restrictive covenant is to be construed according to the plain and ordinary meaning attributed to it at the time of execution."). This definition is consistent with the common understanding of the word. "Golf course" is also not a defined term but is commonly understood to mean "a comparatively large unobstructed acreage involving enough room over which to walk or ride, point to point, over a generally prescribed course, and to strive to send a ball long distances with variable accuracy, all without unreasonably endangering other players or intruding upon them." Amberley Swim & Country Club, Inc. v. Zoning Bd. of Appeals of Amberley, 117 Ohio App. 466, 191 N.E.2d 364, 366 (Ohio Ct. App. 1963). Within the context of the deeds at issue, the "facilities" must relate to the use of the Property as a "golf course." As stated below, in the deeds to Debtor and in the Declaration, it is clear that condominium units are not facilities related to the use of the Property as a golf course and therefore these documents unambiguously prohibit the development of the Property into condominium units.[13] See Curtis v. Hyland Hills Park & Recreation District, ___

---

[12] Due to the parties' stipulations, the Court has limited its determinations.

[13] Debtor also has various equitable theories that it asserts should defeat any restrictions that would prohibit the proposed redevelopment of the Property. This Order also does not address Debtor's equitable theories or whether Debtor may nevertheless modify the rights of the Objecting Parties through a chapter 11 plan. If Debtor continues to prosecute this case, this case would appear to be one of the only cases to address whether a debtor may

P.3d ___, 2007 WL 686081 (Colo. Ct. App. 2007) (concluding that the term "swimming facility" was not ambiguous and finding that a water park was not a "swimming facility").

The Declaration and, by incorporation, the deeds to Debtor describe various facilities that relate to the use of the Property as a golf course such as a swimming pool, tennis courts, exercise facilities, meeting rooms, a clubhouse, and beverage facilities. Common to all of these allowed improvements is that they are all amenities commonly associated with a golf course and country club. See AMERICAN HERITAGE DICTIONARY 633 (4th ed. 2000) (stating that "facility" is synonymous with "amenity"). These amenities serve the function of a golf course because they are each intrinsically related to recreational and social activities commonly associated with the sport of golf. See Town of McClellanville, 550 S.E.2d at 302 (holding "the paramount rule of construction is to ascertain and give effect to the intent of the parties as determined from the whole document."). Condominium units are *pre se* neither recreational nor social but are inherently private and exist for the basic purpose of providing shelter to the owner of the unit and therefore are not within the uses allowed by the documents at issue. Though the Court has identified numerous cases discussing facilities related to a golf course, the Court has not identified any cases discussing whether residential units built on a golf course are facilities related to the golf course. See e.g., In re Maples Properties, Inc., 2006 WL 279243 (Bankr. M.D.N.C. 2006) (citing a deed that noted facilities related to a golf club included eighteen hole golf course, club house, tennis courts, swimming pool, golf shop, pro shop, driving range, practice putting green, parking and related support facilities for the maintenance, passage, irrigation and drainage); Algonquin Golf Club v. State Tax Com'n of Missouri, ___ S.W.3d ___,

---

modify a party's rights under a restrictive covenant through a chapter 11 plan. See George W. Kuney, *Further Misinterpretations of Bankruptcy Code § 363(f): Elevating In Rem Interests and Promoting the Use of Property Law to Bankruptcy-Proof Real Estate Developments*, 76 AM. BANKR. L. J. 289, 326-328 (2002) (noting the lack of case law on the application of § 1141 to restrictive covenants).

9

2007 WL 817394 (Mo. Ct. App. 2007) (noting amenities commonly associated with a golf club include "locker rooms, indoor/outdoor dining areas, entertainment facilities, bars, kitchens, swimming pools, fitness centers, offices, golf cart storage, maintenance buildings, tennis courts, and croquet courts.")

Perhaps more important than the term "facilities" is the unambiguous restriction that the Property is for "golf course use only." This provision appears to restrict the entire portion of the Property to use as a golf course and associated facilities. The development of any portion of the Property into condominium units, as proposed by the Plan, is not using the Property as a golf course but rather sub-dividing the Property for private residential use, thereby diminishing the Property's availability for recreational and social uses associated with the sport of golf. The deeds appear to prohibit this redevelopment. Such an interpretation of this restriction in the deeds is supported by the general plan of development set forth in the Declaration, which specifically segregates the residential portion of the Eastport Community, referred to in the Declaration as "Neighborhoods," from the Property. This plan of development provides further indication that the Property was not to be developed for residential use but was specifically reserved for recreational use. See T 2 Green, LLC v. J.L Abercrombie, et al., (In re T 2 Green LLC), C/A No. 05-05781-W, Adv. No. 05-80154-W slip op. at 15, ___ B.R. ___, 2006 WL 4114242 (Bankr. D.S.C. Feb. 28, 2006) (finding some portion of a property restricted to recreational use where the recorded declaration specifically segregates the residential portion of a development from the portion intended for recreational use).

Nothing in the deeds or Declaration provide Debtor with the flexibility of adding any feature to the Property, such as condominium units, to make the golf course economically viable. The Court finds that the ordinary meaning of the word "facility" as used by the parties in the

10

deeds and Declaration, prohibits the redevelopment of the Property, as proposed in the Plan. Because Debtor's present Plan proposes to redevelop the Property in a manner that is inconsistent with the covenants, the claims of the Objecting Parties, to the extent that they are creditors of Debtor, are impaired.[14] See 11 U.S.C. § 1124 (defining impairment).

## CONCLUSION

Based upon the foregoing, since the Court finds that, for purposes of the Plan before the Court, the development of a portion of the Property into condominium units is not a use allowed by the plain meaning of the covenants at issue, the Objecting Parties are therefore impaired to the extent they hold a claim against Debtor's estate. The Objecting Parties parol evidence objection is sustained.

**AND IT IS SO ORDERED.**

_____
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
June 26, 2007

---

[14] This order does not conclude that the Objecting Parties are creditors of Debtor's estate or that they have a claim in this bankruptcy.

11